## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY ROTONDO,<br><br>            Plaintiff,<br><br>  v.<br><br><br><br>BRIDGE BANCORP, INC., MARCIA Z. HEFTER, DENNIS A. SUSKIND, EMANUEL ARTURI, CHARLES I. MASSOUD, ALBERT E. MCCOY, JR., RAYMOND A. NIELSEN, KEVIN M. O'CONNOR, DANIEL RUBIN, RUDOLPH J. SANTORO, THOMAS J. TOBIN, CHRISTIAN C. YEGEN, and MATTHEW AMIEL LINDENBAUM,<br><br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Anthony Rotondo ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bridge Bancorp, Inc. ("Bridge Bancorp" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Bridge Bancorp and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Bridge Bancorp and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Dime Community Bancshares, Inc. ("Dime") (the "Proposed Transaction").

2.      On July 1, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Dime.  Pursuant to the terms of the Merger Agreement each Dime stockholder will receive 0.648 Bridge Bancorp shares (the "Merger Consideration").  Following close of the Proposed Transaction, Bridge Bancorp will be the surviving corporation operating under the name "Dime Community Bancshares, Inc."

3.      On September 14, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Bridge Bancorp and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Bridge Bancorp shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Bridge Bancorp shares.

9.      Defendant Bridge Bancorp is incorporated under the laws of New York and has its principal executive offices located at 2200 Montauk Highway, Bridgehampton, New York 11932.  The Company's common stock trades on the NASDQ under the symbol "BDGE."

10.     Defendant Marcia Z. Hefter ("Hefter") is and has been the Chairman of the Board throughout the relevant time period.

11.     Defendant Dennis A. Suskind ("Suskind") is and has been the Vice Chairman of the Board at all times during the relevant time period.

12.     Defendant Emanuel Arturi ("Arturi") is and has been a director of Bridge Bancorp at all times during the relevant time period.

13.     Defendant Charles I. Massoud ("Massoud") is and has been a director of Bridge Bancorp at all times during the relevant time period.

14.     Defendant Albert E. McCoy, Jr. ("McCoy, Jr.") is and has been a director of Bridge Bancorp at all times during the relevant time period.

15.     Defendant Raymond A. Nielsen ("Nielsen") is and has been a director of Bridge Bancorp at all times during the relevant time period.

16.     Defendant Kevin M. O'Connor ("O'Connor") is and has been a director of Bridge Bancorp at all times during the relevant time period.

17.     Defendant Daniel Rubin ("Rubin") is and has been a director of Bridge Bancorp at all times during the relevant time period.

18.     Defendant Rudolph J. Santoro ("Santoro") is and has been a director of Bridge Bancorp at all times during the relevant time period.

19.     Defendant Thomas J. Tobin ("Tobin") is and has been a director of Bridge Bancorp at all times during the relevant time period.

20.     Defendant Christian C. Yegen ("Yegen") is and has been a director of Bridge Bancorp at all times during the relevant time period.

21.     Defendant Matthew Amiel Lindenbaum ("Lindenbaum") is and has been a director of Bridge Bancorp at all times during the relevant time period.

22.     Defendants Hefter, Suskind, Arturi, Massoud, McCoy, Jr., Nielsen, O'Connor, Rubin, Santoro, Tobin, Yegen, and Lindenbaum are collectively referred to herein as the "Individual Defendants."

23.     The Individual Defendants, along with Defendant Bridge Bancorp, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

24.     Bridge Bancorp is a bank holding company engaged in commercial banking and financial services through its wholly owned subsidiary, BNB Bank ("BNB"). Established in 1910, BNB, with assets of approximately $6.2 billion, operates 39 retail branch locations serving Long Island and the greater New York metropolitan area. Through its branch network and its electronic delivery channels, BNB provides deposit and loan products and financial services to local businesses, consumers and municipalities. Title insurance services are offered through BNB's wholly owned subsidiary, Bridge Abstract. Bridge Financial Services Inc., a wholly owned subsidiary of BNB, offers financial planning and investment consultation.

### The Company Announces the Proposed Transaction

25.     On July 1, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> BRIDGEHAMPTON, N.Y. and BROOKLYN, N.Y., July 01, 2020 (GLOBE NEWSWIRE) -- Bridge Bancorp, Inc. (Nasdaq: BDGE) ("Bridge"), the parent company of BNB Bank, and Dime Community Bancshares, Inc. (Nasdaq: DCOM) ("Dime"), the parent company of Dime Community Bank, today announced that they have entered into a definitive merger agreement pursuant to which the companies will combine in an all-stock merger of equals transaction, valued at approximately $489 million.  The merger combines two complementary banking platforms to create a premier community-based business bank.  The combined company will have over $11 billion in assets, over $8 billion in total deposits, and 66 branches spanning Montauk to Manhattan.

"This highly compelling combination will allow us to build on our complementary strengths and provide significant value for shareholders," said Kevin O'Connor, President and Chief Executive Officer of Bridge Bancorp. "Dime has earned its strong reputation in the greater New York metropolitan market, and I'm thrilled to partner with them. Our enhanced branch footprint and increased capital base will allow us to better serve the needs of our customers. In addition, both companies have strong balance sheets and demonstrated histories of low loan losses through prior cycles, which give me confidence that we will be well-positioned to succeed in any environment. I look forward to working closely with Ken and the entire Dime team as we collectively become New York's premier community bank."

Kenneth J. Mahon, Chief Executive Officer of Dime, commented, "Prior to the onset of our commercial bank transformation four years ago, Dime was a monoline, multifamily thrift lender. This merger is the next logical step in Dime's journey and significantly accelerates our business model transformation. Bridge and Dime are two of the most highly acclaimed and respected franchises in the New York market. Both of us weathered the financial crisis of 2008 with among the lowest loss rates in the entire country. We believe the capital strength of the combined company, Bridge's high-quality deposit base, and Dime's historically strong New York City multifamily loan portfolio, will result in the creation of a solid balance sheet. In Bridge, we have aligned ourselves with a company that has a well-constructed commercial bank balance sheet, shares our values, our community focus, and our commitment to building and retaining highly-talented staffs. I believe that in CEO Kevin O'Connor and President and Chief Operating Officer Stuart Lubow we have the right team to carry on each bank's standalone reputation for customer service, employee engagement and financial performance. We expect our shareholders to benefit from owning a stronger, more attractive, and more formidable competitor in the New York market."

**Strategic Benefits to the Merger**

**Enhances Scale and Builds Upon Complementary Strengths:** The combined company will be strategically positioned to have enhanced scale with expected improved opportunities for growth and profitability. Bridge has a deep history in C&I, commercial real estate, and small business lending, while Dime has been a leading player in low-LTV New York multifamily lending. The combination fortifies complementary commercial and retail banking business lines.

**Creates a Bank with Dominant Market Share:** The combined company will have a highly complementary branch network with limited existing customer overlap, and will be well positioned to increase market share from regional and money-center banks. Its enhanced branch footprint and increased capital base will allow the combined company to serve the needs of small-to-mid-sized businesses. The combined company will have a deep commitment to and extensive skillset in

SBA-lending, which is anticipated to be an active business line in the current environment.

**Prospects to Accelerate Shareholder Value Creation:** Pro forma calculations with respect to the combined company indicate GAAP EPS accretion of 7% to Bridge and 40% to Dime. The transaction is approximately 0.4% accretive to Bridge's Tangible Book Value. Management believes that conservative and achievable cost savings, projected to be approximately 15% of the combined expense base, will drive strong financial metrics, material capital generation and tangible book value per share growth.

**Transaction Details**

Under the terms of the merger agreement, which was unanimously approved by the boards of directors of both companies, Dime will merge with and into Bridge, with Bridge as the surviving corporation, and Dime Community Bank will merge with and into BNB Bank, with BNB Bank as the surviving institution. Following the closing of the transaction, Dime shareholders will receive 0.6480 shares of Bridge common stock for each share of Dime common stock they own. Each outstanding share of Dime's 5.50% Fixed-Rate Non-Cumulative Perpetual Preferred Stock, Series A will be converted into the right to receive one share of a newly created series of preferred stock of Bridge with the same preferences and rights. Upon completion of the transaction, which is subject to both Dime and Bridge shareholder approval, Dime shareholders will own approximately 52% and Bridge shareholders will own approximately 48% of the combined company.

\*     \*     \*

**Timing and Approvals**

The merger is expected to close in the first quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Advisors**

Piper Sandler Companies is acting as financial advisor, and has rendered a fairness opinion to the board of directors of Bridge. Luse Gorman, PC is serving as legal counsel to Bridge. Raymond James is acting as financial advisor, and has rendered a fairness opinion to the board of directors of Dime. Holland & Knight LLP is serving as legal counsel to Dime.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

26.     On September 14, 2020, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

27.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### <u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>

28.     The Registration Statement contains projections prepared by the Company's and Dime's management concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     Specifically, regarding the financial projections, the Registration Statement fails to disclose: (i) total assets; (ii) loans/deposits; (iii) nonperforming assets/total assets; (iv) tangible common equity/tangible assets; (v) Tier 1 Leverage Ratio; (vi) Total Risk- Based Capital Ratio; (vii) CRE/Total Risk-Based Capital Ratio; (viii) LTM Return on Average Assets; (ix) LTM Return on Average Equity; (x) LTM Net Interest Margin; (xi) LTM Efficiency Ratio; (xii) Price/Tangible Book Value; (xiii) Price/LTM Earnings per share; (xiv) Price/2020E Earnings per Share; (xv) Price/2021E Earnings per Share; (xvi) Current Dividend Yield; and (xvii) Market Value.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Raymond James' Financial Opinion**

31.     The Registration Statement contains the financial analyses and opinion of Raymond James concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Raymond James' *Contribution Analysis*, the Registration Statement fails to disclose the following for both companies: (i) estimated 2020 net income; (ii) estimated 2021 net income; (iii) total assets; (iv) gross loans; (v) total deposits; (vi) non-interest bearing deposits; (vii) tangible common equity; and (viii) last twelve months core net income.

33.     With respect to Raymond James' *Discounted Cash Flow Analysis* for both companies, the Registration Statement fails to disclose: (i) estimated calendar year 2025 earnings; (ii) estimated terminal values for both companies in 2024; (iii) the inputs and assumptions underlying Raymond James' selection of the discount rates of 9.5% to 12.75%.

34.     With respect to Raymond James' *Selected Companies Analysis*, the Registration Statement fails to disclose the following multiples for each of the comparable companies as part of its analysis: (i) basic tangible book value per share at March 31, 2020 as shown by S&P Global Market Intelligence; (ii) last twelve months core earnings per share; (iii) next fiscal year earnings per share.

35.     With respect to Raymond James' *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Raymond James' seleciton of the discount rates of 9.00% to 12.00%; (ii) the present value of the estimated excess cash flows that the pro forma resulting company could generate over the period from July 1, 2020 through December 31, 2024; (iii) the present value of the pro forma resulting company's implied terminal value at the end of such period, in each case applying the estimated Pro Forma Financial Adjustments; (iv) the basis for assuming that the pro forma resulting company would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level; (v) the basis for Raymond James' application of the range of 11.0x to 13.0x to the pro forma resulting company's estimated 2025 earnings.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Piper Sandler's Financial Opinion

36.     The Registration Statement contains the financial analyses and opinion of Piper Sandler & Co. ("Piper Sandler") concerning the Proposed Transaction, but fails to provide material information concerning such.

37.     With respect to Piper Sandler' *Comparable Companies Analysis* for Bridge Bancorp, the Registration Statement fails to disclose the following multiples for each of the comparable companies in the Bridge Peer Group and the Dime Peer Group selected by Piper Sandler as part of its analysis: (i) total assets; (ii) loans/deposits; (iii) nonperforming assets/total assets; (iv) tangible common equity/tangible assets; (v) Tier 1 Leverage Ratio; (vi) Total RiskBased Capital Ratio; (vii) CRE/Total Risk-Based Capital Ratio; (viii) LTM Return on Average Assets; (ix) LTM Return on Average Equity; (x) LTM Net Interest Margin; (xi) LTM Efficiency Ratio; (xii) Price/Tangible Book Value; (xiii) Price/LTM Earnings per share; (xiv) Price/2020E Earnings per Share; (xv) Price/2021E Earnings per Share; (xvi) Current Dividend

Yield; and (xvii) Market Value.

38.     With respect to Piper Sandler's *Net Present Value Analysis* for Bridge Bancorp, the Registration Statement fails to disclose the inputs and assumptions used by Piper Sandler to derive the range of discount rates of 8.0% to 13.0%, price to 2024 earnings multiples ranging from 8.0x to 15.5x, and multiples of December 31, 2024 tangible book value ranging from 75% to 150% used in its analysis.

39.     With respect to Piper Sandler's *Net Present Value Analysis* for Dime, the Registration Statement fails to disclose the inputs and assumptions used by Piper Sandler to derive the range of discount rates of 8.0% to 13.0%, price to 2024 earnings multiples ranging from 8.0x to 15.5x, and multiples of December 31, 2024 tangible book value ranging from 75% to 150% used in its analysis.

40.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

41.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

47.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

48.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger

Agreement and the preparation of the Company's financial projections.

50.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Bridge Bancorp within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Bridge Bancorp, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 23, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*